Krysta Kauble Pachman (SBN 280951)
Eliza Finley (SBN 301318)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: kpachman@susmangodfrey.com
Email:  efinley@susmangodfrey.com


*Attorneys for Plaintiffs*
*Domenica Berman and Abygael Piehl*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMENICA BERMAN and ABYGAEL PIEHL, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br>FORBES MEDIA LLC,<br><br>*Defendant.* | Case No. 24-cv-09287-WHO<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  June 10, 2026<br>Time: 2:00 pm<br>Ctrm: Courtroom 2 – 17th Floor<br>Judge: Hon. William H. Orrick |

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on June 10, 2026 at 2:00 p.m., or as soon as this matter may be heard, in Courtroom 2 – 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Domenica Berman and Abygael Piehl ("Plaintiffs"), on behalf of themselves and all others similarly situated, will respectfully move this Court to: (i) grant preliminary approval of the proposed Settlement Agreement ("Settlement Agreement" or "Settlement"); (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Susman Godfrey L.L.P. and Don Bivens PLLC as Class Counsel; (iii) establish procedures for giving notice to members of the Settlement Class; (iv) approve forms of notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time and place for a final approval hearing and a schedule leading up to the final approval hearing.

This Motion is based on the Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Krysta K. Pachman and accompanying exhibits, the Declaration of Karen Peak and accompanying exhibits, the pleadings, records, and other filings in the case, and other such matters and argument as the Court may consider at the hearing of this Motion.

i

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| | A. | The Parties | 2 |
| | B. | The California Invasion of Privacy Act | 2 |
| | C. | Plaintiffs' Allegations | 3 |
| | D. | Procedural History | 3 |
| III. | SUMMARY OF THE PROPOSED SETTLEMENT | | 4 |
| | A. | The Proposed Settlement Class | 4 |
| | B. | Monetary Relief | 4 |
| | C. | Business Practice Change | 6 |
| | D. | Release | 7 |
| | E. | Proposed Attorneys' Fees, Expenses, and Awards | 8 |
| | F. | Notice and Administration. | 9 |
| IV. | ARGUMENT | | 10 |
| | A. | The Court Should Certify a Rule 23(b)(3) Class for Settlement. | 10 |
| | B. | The Proposed Settlement is Fair, Reasonable and Adequate. | 14 |
| | C. | The Court Should Direct Notice to the Class. | 18 |
| | D. | The Court Should Set Settlement Deadlines and Schedule a Final Approval Hearing. | 20 |
| V. | CONCLUSION | | 21 |

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013).......................................................................................... 17

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)......................................................................................... 17

*Burdette v. FuboTV, Inc.*,
No. 2024LA001460 (Ill. Cir. Ct., Dupage Cty.) ............................................................ 16

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (2020)...................................................................................................... 13

*Ching v. Siemens Indus., Inc.*,
2014 WL 2926210 (N.D. Cal. June 27, 2014) ................................................................ 23

*In re Emulex Corp. Sec. Litig.*,
210 F.R.D. 717 (C.D. Cal. 2002) .................................................................................... 19

*Feldman v. Star Tribune Media Company, LLC*,
No. 22-cv-01731 (D. Minn.) ........................................................................................... 16

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025).................................................................... 22

*G. F. v. Contra Costa County*,
2015 WL 4606078 (N.D. Cal. July 30, 2015).................................................................. 22

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....................................................................... 22

*In re Google Referrer Header Privacy Litig.*,
2014 WL 1266091 (N.D. Cal. Mar. 26, 2014)................................................................. 26

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)......................................................................................... 22

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................ 24

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010)........................................................................................... 14

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020)................................................................ 21, 22, 24

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019)............................................................................................ 20

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  609 F. Supp. 3d 942 (N.D. Cal. 2022) ........................................................................ 17, 19

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 1178–82 (N.D. Cal. 2025) .................................................................. 22

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .................................................................................................. 11

*In re MacBook Keyboard Litig.*,
  2023 WL 3688452 (N.D. Cal. May 25, 2023) ........................................................................ 24

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)............................................................................................ 17

*Montera v. Premier Nutrition Corp.*,
  2025 WL 751542 (N.D. Cal. Mar. 10, 2025)........................................................................ 11

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
  2021 WL 1788447 (N.D. Cal. May 5, 2021) ........................................................................ 14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 23

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014)............................................................................................ 18

*Sellers v. Bleacher Report, Inc.*,
  No. 2024-003537-CA-01 (Fla. Cir. Ct, Miami-Dade Cty.) ...................................................... 16

*Staton v. Boeing, Co.*,
  327 F. 3d 938 (9th Cir. 2003)........................................................................................ 16, 18

*Torres v. Prudential Financial, Inc.*,
  2024 WL 4894289 (N.D. Cal. Nov. 26, 2024)...................................................................... 20

*Torres v. Prudential Financial, Inc.*,
  2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ...................................................................... 23

*In re TracFone Unlimited Service Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) .............................................................................. 15

iv

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022)......................................................................................... 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010)........................................................................................ 20

*Zaklit v. Nationstar Mortg. LLC*,
    2017 WL 3174901 (C.D. Cal. July 24, 2017) ................................................................ 20

**Statutes**

28 U.S.C. § 1712 ...................................................................................................................... 26

28 U.S.C. § 1715(b) ................................................................................................................. 26

Cal. Bus. & Prof. Code § 17200, *et seq.* .................................................................................. 7

Cal. Pen. Code § 631................................................................................................................ 20

Cal. Pen. Code § 637.2............................................................................................................. 11

Cal. Pen. Code § 638.50....................................................................................................... 8, 17

Cal. Pen. Code § 638.51........................................................................................................ 7, 8

California Unfair Competition Law ............................................................................................ 7

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................*passim*

4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:50 (6th
    ed. June 2025 update)................................................................................................... 21

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This motion seeks preliminary approval of a class-action settlement under Federal Rule of Civil Procedure 23(b)(3) between Plaintiffs Domenica Berman and Abygael Piehl ("Plaintiffs") and Defendant Forbes Media LLC ("Forbes") (collectively, the "Parties"). In their Complaint, Plaintiffs alleged that Forbes's installation and use of third-party trackers that collected IP addresses and other unique identifiers from visitors to Forbes.com (the "Trackers") constituted unauthorized use of "pen registers" and "trap and trace devices" under the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 638.51(a), and violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* Dkt. 1. The Parties reached the proposed settlement following more than a year of litigation. On September 30, 2025, the Court requested that counsel explore early mediation, *see* Dkt. 35, which prompted settlement discussions between the Parties' counsel with the assistance of a neutral mediator, including but not limited to as part of a full-day mediation.

The discussions ultimately proved fruitful and resulted in a settlement that counsel for Plaintiffs believes is exceptional considering the enormous risks that Plaintiffs and the putative class faced before trial, at trial, and on appeal. The Settlement Agreement, attached as Exhibit 1 to the Declaration of Krysta K. Pachman ("Pachman Decl."), provides monetary relief and significant business practice reforms to the members of the Settlement Class (as defined below). Under the terms of the settlement, Forbes is required to create a $10 million non-reversionary fund from which any of the Settlement Class Members can make a claim for a pro rata share. Based on anticipated claims rates, individual claimants can expect to receive estimated payments ranging from approximately $32 to $189 per approved claim.  The Settlement also includes a business practice change by Forbes to provide California visitors with enhanced notice of the presence of third-party Trackers and increased control over how their data is collected and shared with third parties, with the costs of implementing such changes borne entirely by Forbes separate and apart from the Settlement Fund. The Settlement Agreement also authorizes Plaintiffs' counsel to seek attorneys'

1

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

fees of 25% of the settlement fund and incentive awards of $2,500 for each of the two class representatives.

This Settlement provides significant relief to the Plaintiffs and the Class. The Settlement satisfies the requirements of Federal Rule of Civil Procedure 23 and merits preliminary approval. Accordingly, Plaintiffs respectfully request that the Court enter an order in the form of the attached Proposed Preliminary Approval Order that (i) grants preliminary approval of the Settlement; (ii) conditionally certifies the Settlement Class; (iii) designates Plaintiffs as the Class Representatives and appoints Susman Godfrey L.L.P. and Don Bivens PLLC as Class Counsel; (iv) appoints Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator and establishes procedures for giving notice to members of the Settlement Class; (v) approves forms of notice to Settlement Class Members; (vi) mandates procedures and deadlines for exclusion requests and objections; and (vii) sets a date, time and place for a final approval hearing, and further proceedings leading up to that hearing.

## II.    BACKGROUND

### A.    The Parties

Plaintiffs Domenica Berman and Abygael Piehl are California residents. Dkt. 1 ¶¶ 7–8. Defendant Forbes operates Forbes.com. *Id.* ¶ 9.

### B.    The California Invasion of Privacy Act

The California Invasion of Privacy Act imposes civil liability on any person "install[s] or use[s] a pen register or trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). California Penal Code § 638.50(b) defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." California Penal Code § 638.50(c) defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

communication."

### C. Plaintiffs' Allegations

In Plaintiffs' Complaint, Plaintiffs alleged that Forbes violated the pen register and trap and trace device prohibitions under CIPA by installing Trackers on its website, including the LinkedIn Insight Tag (developed by LinkedIn), the Bing Universal Event Tracking ("UET") Tag (developed by Microsoft), and the Adnx Tracker (developed by Xandr, later purchased by Microsoft). Dkt. 1 at ¶¶ 2–4. Plaintiffs further alleged that, without obtaining any affirmative consent, Forbes uses Trackers to collect and send IP address and other unique identifiers of Forbes.com users to LinkedIn, Microsoft, and other undisclosed third parties which then feed this data into large databases to compile and use information about specific users' browsing and shopping habits across the internet. *Id.* ¶¶ 24–26, 32, 37, 40, 43. According to Plaintiffs, this allows Forbes and others to optimize targeted advertising campaigns and provide website and advertising analytics at the cost of depriving ordinary internet users of control over their private internet activity. *Id.*

### D. Procedural History

On December 20, 2024, Plaintiffs filed this putative class action alleging that Forbes violated CIPA and the UCL. Dkt 1. Forbes did not move to dismiss the Complaint. The Parties proceeded to engage in extensive written discovery. They exchanged over 2,500 documents and also served and responded to numerous requests for admission and interrogatories. Pachman Decl. ¶ 4. Plaintiffs sought and obtained discovery from third parties Microsoft and LinkedIn, which required extensive negotiations. *Id.* ¶ 5. Plaintiffs also engaged, and began working with, a software expert who had the expertise necessary to understand how the Trackers collect and transmit user data. *Id.* ¶ 6.

The Parties were about to schedule numerous depositions when the Court asked the Parties to explore mediation. *Id.* ¶ 7. Counsel for the Parties then decided to ask the Court to modify the pretrial schedule to allow the Parties to prepare for the mediation and begin depositions shortly thereafter if negotiations were unsuccessful. *Id.*

Following an all-day mediation on January 7, 2026, with the Honorable Suzanne H. Segal,

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

the Parties ultimately accepted her mediator's proposal and executed a term sheet on January 30, 2026. *Id.* ¶¶ 8–9. The Parties subsequently finalized the terms of the Settlement Agreement after another two months of negotiations and securing a claims administrator pursuant to a competitive bidding process. *Id.* ¶ 10.

**III.   SUMMARY OF THE PROPOSED SETTLEMENT**

**A.      The Proposed Settlement Class**

The Settlement Class is defined as:

> All California residents who, from December 20, 2023, to the Preliminary Approval Date, accessed websites owned or controlled by Forbes and had their IP addresses and/or unique identifiers shared with third parties as a result of the Trackers present on Forbes's websites. Excluded from the settlement class are: (1) Forbes and its parents, subsidiaries, and affiliates, and the officers, directors, employees, and agents of any of them; (2) members of the immediate families of any officers or directors of Forbes, and the heirs, successors, or assigns of any of the foregoing; (3) anyone employed by Settlement Class Counsel's law firms; (4) any judicial officer to whom this Action is assigned, and his or her immediate family members; and (5) any Person who timely and validly requests exclusion from the Settlement Class in accordance with the procedures set forth in this Agreement.

Ex. 1 § 25.

The Settlement Class differs slightly from the class definition in the operative Complaint because it is: (1) broader in its scope regarding the websites covered, (2) does not limit the class to visitors using Chrome or Microsoft Edge browsers, and (3) does not exclude registered users. This broader definition is appropriate because at least some Trackers collected information from all visitors to websites owned by Forbes regardless of browser type or registration status.

While the Parties cannot obtain the precise number of Settlement Class Members without extensive and costly third-party discovery, Plaintiffs believe that there have been approximately 3.9 million unique California visitors to Forbes.com from December 20, 2023 to the present. Pachman Decl. ¶ 22.

**B.      Monetary Relief**

Under the Settlement Agreement, Forbes will fund a non-reversionary cash settlement fund ("Settlement Fund") in the amount of $10,000,000 to cover all claims filed by Settlement Class

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

Members, as well as the costs of settlement administration, service awards, and attorneys' fees, costs, and expenses that the Court may approve. Settlement Class Members can receive a pro rata cash payment which will be determined by the number of claims filed.

The Settlement Fund will be allocated as follows: first, the costs of settlement administration, attorneys' fees and costs and any incentive awards awarded by the Court will be deducted; second, the remaining amount will be distributed pro rata to Settlement Class Members who timely submit valid proofs of claim. Ex. 1 §§ 5, 12, 13, 32. The Settlement does not contemplate a cy pres award.

California Penal Code § 637.2(a)(1) provides for statutory damages of $5,000 for each violation. However, assuming there are 3.9 million Settlement Class Members, Forbes's theoretical liability would be approximately $19.5 billion. The discount from the theoretical statutory maximum is justified by two independent considerations. First, aggregated statutory damages of $19.5 billion would raise due process concerns and carry the risk of being found excessive under Ninth Circuit precedent. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating award of $925 million in statutory damages); *Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025) (awarding reduced statutory damages to $8.3 million after finding full amount of $83 million in statutory damages was "grossly punitive and thus wholly disproportionate to the legislative goals"). Second, Plaintiffs faced significant litigation risks at every stage, including unsettled questions of Article III standing for CIPA pen register claims, the risk of an adverse ruling on class certification or summary judgment, and the uncertainties of trial and appeal in a rapidly evolving area of privacy law. *See infra* at § IV.B.iii.

The UCL claim independently confirms the reasonableness of the settlement. Unlike CIPA, the UCL does not provide for statutory damages; the only monetary remedy available is restitution, which is limited to the return of money or property that the defendant obtained from the plaintiff through the unfair business practice. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Here, the property at issue is the economic value of class members' IP addresses and other identifiers disclosed to third-party Trackers. Given the ubiquity of such tracking across the

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

internet, any individual class member's data shared by Trackers on Forbes.com has negligible economic value, and the restitution recoverable under the UCL would be negligible. On a per-class-member basis, the $10 million Settlement Fund yields approximately $2.56 per class member. But actual claimants will receive substantially more. Based on claims rates of 1% to 6% observed in comparable privacy settlements, Peak Decl. ¶ 27, and after deducting attorneys' fees, administration costs, and service awards from the Settlement Fund, individual claimants can expect to receive estimated payments ranging from $32 to $189 per approved claim. This recovery substantially exceeds what any class member could hope to recover under the UCL alone and is on par with recoveries in other CIPA data privacy settlements. Accordingly, on a claim-by-claim basis, the $10 million Settlement Fund represents a significant recovery relative to the realistic value of both the CIPA and UCL claims when accounting for the litigation risks described above.

The chart attached as Exhibit A compares this Settlement to other CIPA data privacy settlements. This Settlement compares favorably to prior CIPA pen register settlements because it is on par with the actual or estimated recovery of prior settlements under these provisions while covering one of the largest class sizes. It also compares favorably to other CIPA data privacy settlements in terms of recovery per class member.

### C.      Business Practice Change

Forbes has agreed to implement meaningful reforms to its websites to provide greater transparency regarding Forbes' use of Trackers. Specifically, no later than 60 days after the effective date of the Settlement, Forbes agrees to modify its websites to provide greater notice regarding Forbes' use of Trackers as part of Forbes ongoing compliance with applicable privacy laws, including in its privacy policy and other consumer-facing disclosures. Forbes will also modify its websites to provide California visitors with enhanced notice of the presence of third-party Trackers and increased control over how their data is collected and shared with third parties. Ex. 1 at § 35. These changes will require Forbes to implement tools to allow California visitors to control how their data is collected and shared with third parties due to Forbes' use of third-party Trackers, such as through a banner/pop-up, so that California users are meaningfully informed of the data-

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

collection practices at issue in this litigation.  The costs of implementing these changes will be borne entirely by Forbes and will not be paid from the Settlement Fund.  *Id.*

These business practice changes provide significant prospective value to the Settlement Class and the broader public.  The core harm alleged in this litigation, the collection and disclosure of users' data without their knowledge or consent, is directly addressed by requiring Forbes to provide enhanced notice regarding its use of Trackers and greater control to California users over how their data is collected and shared with third parties.  This forward-looking reform eliminates the conditions that gave rise to Plaintiffs' claims and ensures that Forbes data collection practices going forward are transparent and consensual.  While the precise dollar value of these business practice changes is difficult to quantify, courts routinely recognize the substantial value of business practice changes that provide ongoing protection to class members. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (2020). The combination of the $10 million monetary fund and these significant nonmonetary reforms provides comprehensive relief to the Settlement Class.

**D.      Release**

In exchange for the relief described above, Forbes and each of the "Releasees," as defined in the Settlement Agreement, will be released from all claims "on account of or arising out of or resulting from  the alleged disclosure, use, interception, or recording of Settlement Class Members' IP addresses, unique identifiers, and/or personal information by Forbes and/or the Trackers on Forbes's websites" through the "Effective Date," as defined in the Settlement. Ex. 1 at §§ 7, 22, 54. Plaintiffs and the Settlement Class will also provide a Section 1542 waiver. *Id.* § 54.

The released claims are broader than the CIPA and UCL claims asserted in the Complaint. This is appropriate because the released claims share an identical factual predicate with the claims in the Complaint: Forbes's use of Trackers on its websites that collect and transmit data from visitors to Forbes.com to third parties. This broad release is appropriate because courts routinely approve releases broader than the claims pled so long as the released claims share an identical factual predicate with the settled conduct. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("[W]e have held that federal district courts properly released claims not alleged in the

underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement."). The $10 million Settlement Fund and the significant business practice reforms, including Forbes' agreement to implement an affirmative consent mechanism for its terms of service, adequately compensate the Class for the release of claims arising from the same course of conduct.

Plaintiffs are not aware of any other case affected by the Settlement.

**E.     Proposed Attorneys' Fees, Expenses, and Awards**

The Parties also reached an agreement that Plaintiffs may move forward for an award of attorneys' fees and costs in an amount not exceeding 25% of the Settlement Fund, Ex. 1 § 57, the benchmark percentage for a reasonable fee award in the Ninth Circuit. *See, e.g.*, *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, 2021 WL 1788447, at *12 (N.D. Cal. May 5, 2021) ("The benchmark for a reasonable fee award as a percentage of the common fund is 25%"). Although Plaintiffs will be moving separately for attorneys' fees and costs, the Northern District's Procedural Guidance states that the motion for preliminary approval include information about fees and costs (including expert fees) that Settlement Class Counsel intends to request, the lodestar, and the resulting multiplier. As of the date of this filing, Settlement Class Counsel has expended approximately 840.9 hours litigating this Action, resulting in a lodestar of approximately $836,442.50. Pachman Decl. ¶ 23. Settlement Class Counsel has also expended $118,136.30 on case expenses, including expert fees. *Id.* ¶ 24. The requested fee of 25% of the Settlement Fund ($2,500,000) represents a multiplier of approximately 2.98. This multiplier is well within the range approved by courts in the Ninth Circuit, and the lodestar cross-check confirms the reasonableness of the percentage-of-fund request. The value of the non-monetary relief obtained for the Class, including Forbes' agreement to provide California visitors with enhanced notice of the presence of third-party Trackers and increased control over how their data is collected and shared with third parties also enhances the overall value of the Settlement beyond the $10 million monetary fund and further supports the reasonableness of the requested fee. A detailed analysis of the reasonableness of the fee award will be provided with the forthcoming Motion for Attorneys' Fees, Costs, and

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

Service Awards.

Plaintiffs may also move for incentive awards not to exceed $2,500 per Plaintiff Class Representative. Ex. 1 § 57. This is well within the range of a presumptively reasonable service award. *See, e.g.*, *In re TracFone Unlimited Service Plan Litig.*, 112 F. Supp. 3d 993, 1010 (N.D. Cal. 2015) ("The $2,500 awards requested are reasonable, especially in light of other cases where similar or larger incentive awards have been awarded to named class plaintiffs."). Plaintiffs' request for service awards in the amount of $2,500 will be supported by Plaintiffs' active participation in this litigation: both Plaintiffs provided information regarding their use of Forbes.com, met with counsel on multiple occasions, collected and produced documents in response to Forbes's requests for document production, and responded to numerous interrogatories and requests for admission. Pachman Decl. ¶ 15.  The modest service awards will not undermine the adequacy of the named Plaintiffs as class representatives as they are a small fraction of the Settlement Fund and do not create any incentive to act contrary to the interests of the class.

Exhibit A compares Plaintiffs' attorneys' fees and service award requests to other CIPA privacy settlements where attorneys' fees and service awards have been awarded:

Settlement Class Members will be notified through the Class Notice of Plaintiffs' intent to seek attorneys' fees, expenses, service awards and the amounts sought for each.

**F.      Notice and Administration.**

After a competitive bidding process, the Parties selected Kroll to serve as Settlement Administrator to provide notice to the Class and all other services necessary to implement the settlement. Pachman Decl. ¶ 25. Seven claim administration companies made proposals that included a combination of e-mail and digital notice designed to reach at least 70% of the Settlement Class. Some proposals, like Kroll's, proposed electronic claims payments, while others proposed both physical checks and electronic payments. *Id.* ¶ 26. Settlement Class Counsel concluded that Kroll's plan provided the best plan to reach the greatest number of Class Members and achieve the highest potential claims rate for this case at a competitive cost. *Id.*

The Declaration of Carla Peak ("Peak Decl.") describes the Notice Plan, Kroll's credentials, its

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

procedures for securely handling class member data, and its acceptance of responsibility and maintenance of insurance in case of errors. Peak Decl. ¶¶ 1-38. Kroll has administered over sixteen privacy settlements, including CIPA pen register cases. *Id.* at ¶ 6. Kroll anticipates the cost of administration will be approximately $121,153 if 1% submit claims. *Id.* at ¶ 31. This cost includes the implementation of the following fraud prevention mechanism: the settlement website will be configured to only allow users visiting the website from the IP address identified and provided by Forbes's records to file a claim form online. Users visiting the settlement website via other IP addresses will be channeled to a downloadable paper claim form that can be printed from the settlement website and mailed to Kroll via a case-specific PO Box address. *Id.* at ¶ 29. The anticipated cost of administration is 1.2% of the value of the settlement fund and is reasonable. Kroll's settlement administration costs will be paid directly from the Settlement Fund. Ex. 1 § 5.

The expected claims rate for this Settlement is approximately 1–6%, based on the experience of Kroll. This estimate is informed by claims rates achieved in *Burdette v. FuboTV, Inc.*, No. 2024LA001460 (Ill. Cir. Ct., Dupage Cty.), *Feldman v. Star Tribune Media Company, LLC*, No. 22-cv-01731 (D. Minn.) and *Sellers v. Bleacher Report, Inc.*, No. 2024-003537-CA-01 (Fla. Cir. Ct, Miami-Dade Cty.), which were selected because they involved similar CIPA tracker claims, comparable class sizes, and analogous notice and claims processes. Peak Decl. ¶ 27.

## IV.   ARGUMENT

The Court should conditionally certify the Settlement Class and preliminarily approve the Parties' Settlement Agreement under Federal Rule of Civil Procedure 23. When the parties to a putative class action reach a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing, Co.*, 327 F. 3d 938, 952 (9th Cir. 2003). Here, class certification for settlement purposes is proper, and the Parties' proposed settlement is fair.

### A.   The Court Should Certify a Rule 23(b)(3) Class for Settlement.

"Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements

10

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). In this case, Plaintiffs seek certification of a class under Rule 23(b)(3).

All four requirements of Rule 23(a) are satisfied, as are the requirements of Rule 23(b)(3). Thus, the Settlement Class should be conditionally certified for settlement purposes.

i.    Rule 23(a)(1) – Numerosity

"[C]ourts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members." *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022). "The party seeking certification does not need to state the exact number of potential class members." *Id.* (citation modified).

Here, while the exact number of Settlement Class Members is not currently feasible to determine because Forbes's records do not contain definitive information as to how many unique individuals from California visited their website, the number of Settlement Class Members definitely exceeds forty and is estimated to be about 3.9 million. Pachman Decl. ¶ 22. The numerosity requirement is clearly satisfied.

ii.    Rule 23(a)(2) – Commonality

Commonality requires a showing that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This requirement is satisfied when "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (citation omitted). Commonality "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, multiple common questions of fact and law exist, including but not limited to: (1) whether the Trackers are "pen registers" or "trap and trace devices" under California Penal Code Section 638.50(b); (2) whether Forbes installed or used the Trackers; and (3) whether the Trackers collect IP addresses and unique identifiers from visitors to Forbes's websites and transmit that information to third parties. Resolution of these questions will turn on common proof regarding

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

Forbes's website and the functionality of the Trackers. The commonality requirement is therefore easily satisfied here.

### iii. Rule 23(a)(3) – Typicality

The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 351, 338 (2011)). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct'" *Id.* (citation omitted).

Here, Plaintiffs Berman and Piehl suffered the same injury arising from the same course of conduct as the other Settlement Class Members. Berman and Piehl allege that Forbes violated CIPA and the UCL by installing Trackers that collected their IP addresses and other unique identifiers and transmitted that information to third parties.  Because the same allegations support absent class members' claims, the putative class representatives' claims are typical of the claims of the Settlement Class. The typicality requirement is satisfied.

### iv. Rule 23(a)(4) – Adequacy

Adequacy requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

As to the first question, Plaintiffs and Proposed Class Counsel have no conflicts of interest with the Class. Pachman Decl. ¶¶ 2, 15. The Plaintiffs, like each absent Settlement Class Member,

12

have a strong interest in proving Forbes's common course of conduct and obtaining redress. *Id.* ¶ 15.

As to the second question, Plaintiffs and their counsel have vigorously prosecuted this action and will continue to do so through final approval. Plaintiffs and counsel brought their claims, investigated the technology at issue, engaged in extensive discovery, and attended mediation with a neutral mediator. *Id.* ¶¶ 3–9. Plaintiffs played a critical role in this litigation by providing background information and meeting with counsel, collecting and producing documents in response to Forbes's requests for document production, and responding to numerous interrogatories and requests for admission. *Id.* ¶ 15. Plaintiffs' counsel, Susman Godfrey L.L.P. and Don Bivens PLLC both have significant experience litigating class actions, including privacy-related class actions similar to this one, as do the particular attorneys who are representing Plaintiffs in this case. *Id.* ¶¶ 16–21; *see also In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) ("In evaluating the adequacy of attorneys representing the class, a court may examine the attorneys' professional qualifications, skill, experience, and resources."). The adequacy requirement is satisfied here.

### v.   Rule 23(b)(3) – Predominance and Superiority

Under Rule 23(b)(3), Plaintiffs must prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Predominance under Rule 23(b)(3) asks whether a putative class is 'sufficiently cohesive to warrant adjudication by representation.'" *JUUL Labs*, 609 F. Supp. 3d at 967 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Predominant questions make up 'a significant aspect of the case' and clearly justify 'handling the dispute on a representative rather than on an individual basis.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022). Predominance is readily satisfied in CIPA tracker cases because the central questions—whether Forbes installed the Trackers, whether those Trackers qualify as pen registers, and whether they transmitted user data to third parties—are entirely common to the class and susceptible to classwide

13

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

proof. *See Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *1, 4-9 (N.D. Cal. Nov. 26, 2024) (certifying class alleging claims under CIPA, Cal. Pen. Code § 631, in action concerning website script that enabled a third party to intercept and record users' real-time interactions with Prudential's online form ).

A class action must also be "the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010) (quotation marks and citation omitted) (reversing district court's order denying class certification and holding that "classwide adjudication" of consumer protection action concerning approximately 3,000 vehicles was "superior to other means of adjudicating [the] case"). Superiority is satisfied here because the cost of individual CIPA litigation would dwarf any single class member's potential recovery. *See Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *10 (C.D. Cal. July 24, 2017) ("[T]he Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification." (quotation marks and citation omitted).

Requiring each of the approximately 3.9 million Settlement Class Members to pursue individual claims involving complex questions of statutory interpretation and data privacy technology would be vastly inefficient and impractical. Class-wide adjudication is plainly the superior method. *See Wolin*, 617 F.3d at 1175–76.

### B.     The Proposed Settlement is Fair, Reasonable and Adequate.

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). In deciding whether to preliminarily approve a settlement, the Court must determine, on a preliminary basis, whether the proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2). The proposed Settlement satisfies Rule 23(e)(2) criteria.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

  i. <u>Fed. R. Civ. P. 23(e)(2)(A) – Plaintiffs and Their Counsel Have Adequately Represented the Class</u>

Plaintiffs and Proposed Class Counsel have adequately represented the class for the reasons discussed above in connection with Rule 23(a)(4). *See supra* § IV.A.iv; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at \*5 (S.D. Cal. Jan. 31, 2020) (holding that the adequacy factor under Rule 23(e)(2)(A) is satisfied where adequacy under Rule 23(a)(4) has been met).

  ii. <u>Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was Negotiated at Arm's Length</u>

Rule 23(e)(2)(B) directs courts to consider whether "the proposal was negotiated at arm's length." Evidence of "a truly adversarial bargaining process" is "the presence of a neutral third party mediator." 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed. June 2025 update); *see also* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note to 2018 amendment (noting that "the involvement of a neutral or court-affiliated mediator or facilitator in [those] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

This Settlement was the product of a highly adversarial bargaining process that arose only after extensive written and document discovery. The Parties began settlement discussions at the behest of the Court. *Se*e Dkt. 35. By that time, the Parties thoroughly understood the merits of their claims and defenses and the risks both sides faced at trial and on appeal. The Parties entered mediation armed with significant knowledge to advocate their positions effectively.

The proposed Settlement was intensely negotiated over the course of a full-day mediation on January 7, 2026, under the supervision of Judge Segal. Pachman Decl. ¶ 8.  Judge Segal ultimately made a mediator's proposal, which was accepted by the Parties on January 13, 2026. *Id.* ¶ 9. The Parties executed a binding term sheet on January 30, 2026 and that term sheet was later memorialized in the comprehensive Settlement Agreement executed on April 21, 2026. *Id.* ¶¶ 9–10. "[T]he assistance of an experienced mediator in the settlement process confirms that the

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

settlement is non-collusive." *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (quotation marks and citation omitted).

iii.  Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate

Under Fed. R. Civ. P. 23(e)(2)(C), the Court considers whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief . . . ; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *See also Hanlon*, 150 F.3d at 1026 (Factors 2–5). "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6. Here, the relief provided compares favorably to other CIPA settlements. *See supra* at § III.B. All other factors also weigh in favor of preliminary approval.

a)  *The Costs, Risks, and Delay of Trial and Appeal*

Courts in the Ninth Circuit have routinely found that trackers such as those at issue in this case plausibly satisfy the definition of a pen register under CIPA, *see, e.g.*, *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *2 (N.D. Cal. Oct. 9, 2025). But the question of whether the transmission of IP addresses and other identifiers by such software trackers gives rise to a concrete injury for purposes of Article III standing remains largely unsettled in the Ninth Circuit. *Compare Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (finding allegations about being "subject to [] profile-building practices" by pixels was "sufficient to plead an injury conferring Article III standing"), *with Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 1178–82  (N.D. Cal. 2025) (finding disclosure of IP addresses by trackers did not give rise to a concrete injury and noting "a division among district courts in this Circuit as to whether *Transunion* overruled *Facebook Internet Tracking*'s holding that a violation of CIPA, standing alone, gives rise to a concrete injury"). This unresolved question of standing posed a meaningful risk to Plaintiffs' claims. The rapidly evolving nature of CIPA tracker litigation compounds these risks, as demonstrated by summary judgment rulings against plaintiffs even after class certification. *See*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Torres v. Prudential Financial, Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025).

The remaining procedural hurdles remain, including class certification, a contested trial, and the near-certainty of appeal, further counsel in favor of a settlement. *See Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (approving settlement where "significant procedural hurdles remain"); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (noting courts properly consider "the significance of immediate recovery by way of the compromise" compared to "the mere possibility of relief in the future, after protracted and expensive litigation").

> b)  *The Effectiveness of Any Proposed Method of Distributing Relief to the Class*

Rule 23(e)(2)(C)(ii) requires the Court to assess the effectiveness of the proposed distribution method. The advisory committee's note to the 2018 amendment instructs that "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

The claims process in this case will not be unduly demanding. Potential Class Members whose IP addresses correspond with an IP address supplied by Forbes.com to Kroll will be able to submit a simple online claim form to receive a cash award. Peak Decl. ¶ 29. The claim form will ask each potential Settlement Class Member to provide basic information such as their name and contact information, payment election such as PayPal, Venmo, Zelle, and to attest that they accessed Forbes.com in California during the Class Period. *Id.* ¶ 28. The process will be streamlined and simple for those whose IP addresses match those IP addresses of Forbes.com visitors maintained by Forbes. In order to greatly reduce the number of fraudulent or unjustified claims, web users visiting the settlement website will be challenged to file a claim via a downloadable paper claim form. *Id.* ¶ 29. Imposing the minimal burden of submitting a simple paper claim form on those with "unknown" IP addresses is justified by greatly lowering the risk of disbursing Settlement funds pursuant to fraudulent or unjustified claims.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

c)  *The Terms of Any Proposed Award of Attorney's Fees*

Proposed Class Counsel will apply to the Court for an award of attorneys' fees and costs in an amount not exceeding 25% of the Settlement Fund. This is "within the usual range of 20–30% in common fund cases." *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *14 (N.D. Cal. May 25, 2023) (quotation marks omitted). The Court nonetheless does not need to "determine attorney's fees at the preliminary approval stage[.]" *Hilsley*, 2020 WL 520616, at *7.  The Court will have an opportunity to assess the reasonableness of Proposed Class Counsel's requested fee award after they file their forthcoming Motion for Attorneys' Fees, Costs, and Service Awards."

d)  *Any Agreement Required to Be Identified*

Other than the Settlement, no such agreement exists.

iv.  <u>Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats Settlement Class Members Equally</u>

The proposed Settlement satisfies this standard. Every Settlement Class Member who submits an Approved Claim by the Claims Deadline will receive an identical pro rata share of the Settlement Fund and no class member or subgroup will receive preferential treatment. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018) (approving settlement with pro rata distribution as equitable).

**C.    The Court Should Direct Notice to the Class.**

Fed. R. Civ. P. 23(c)(2) requires the Court to "direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Notice Plan is consistent with Rule 23. Within 30 days after entry of an order directing class notice, Forbes will provide to the Settlement Administrator a class list that includes Settlement Class Members' full names and email addresses (to the extent available) as reflected in Forbes's records. Because the Parties cannot otherwise identify a majority of the Settlement Class, the notice plan includes digital notice through a media campaign involving targeted advertising, keyword search advertising, and press releases. Peak Decl. ¶¶ 18-23.  This notice program is designed to reach at least 70% of the Settlement Class with a frequency of

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

approximately 2.6 impressions per class member and is the best notice practicable. *Id.* ¶ 9.

Kroll's notice distribution plan is effective because it is specifically tailored to reach the demographics of Forbes.com visitors. Peak Decl. ¶ 18-23. Based on Kroll's demographic analysis, Kroll designed a multi-channel digital media campaign that includes: (1) targeted social media advertising on Facebook, Instagram, and Threads directed at users interested in business and users who have engaged with Forbes-related pages; (2) display advertising across multiple advertising exchange networks targeted to California adults interested in business and financial news; (3) YouTube video advertising appearing alongside Business & Industrial or Finance content; (4) Google keyword search advertising using search terms such as "Forbes privacy settlement," "Forbes class action," and related phrases; (5) targeted advertising on LinkedIn directed at California members interested in Business and Management or Finance and Economy; and (6) a press release distributed over Cision PR Newswire's US1 California statewide newsline. Peak Decl. ¶ 18-23. This plan leverages social media extensively, consistent with the Northern District's Procedural Guidance encouraging the use of social media to provide notice to class members.

Settlement Class Counsel also considered additional methods of notice recommended by the Northern District's Procedural Guidance. As to identification of potential class members through third-party data sources, Forbes will provide its own records of class member email addresses, which is the most reliable source of contact information for Forbes.com visitors. As to text messages, Kroll's proposal did not include SMS notice because Forbes does not maintain phone numbers for website visitors and the cost of acquiring such data for approximately 3.9 million potential class members would be disproportionate to the benefit. As to hiring a marketing specialist, Kroll's in-house Notice Media Solutions team, which developed the targeted media campaign, functions as an integrated marketing specialist with expertise in class action notice campaigns. As to a settlement website that estimates individual claim amounts, because the Settlement provides equal pro rata payments to all Authorized Claimants, individual claim amounts cannot be estimated until the claims deadline has passed and the total number of approved claims is known. As to distributions via direct deposit, Kroll's distribution plan provides for electronic

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

payments, offering class members who submit online Claim Forms the option of receiving payment via ACH direct deposit, PayPal, Venmo, Zelle, or prepaid card. Peak Decl. ¶ 28. Settlement Class Members who submit paper claims forms will receive payment by check. *Id.*

Similar notice programs have been approved by courts in this Circuit. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, at *7 (N.D. Cal. Mar. 26, 2014) (approving notice by targeted ads, articles in the press, a settlement website, and a toll-free number where "the size and nature of the class renders it nearly impossible to determine exactly who may qualify as a class member" and "direct notice to class members by mail, e-mail or other electronic individualized means [was] impractical").

Kroll will also set up a settlement website and toll-free telephone number, and will provide clear and informative notices that include all of the information required under the Northern District's Procedural Guidance for Class Action Settlements Nos. 3 to 5. *See* Ex. 4 to Peak Decl. (Long Form Notice). Kroll will also serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715.[1] No other notices to government entities are required or have been provided.

**D.      The Court Should Set Settlement Deadlines and Schedule a Final Approval Hearing.**

In connection with preliminary approval, the Court must set a Final Approval Hearing date, dates for Notice, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiffs propose the following schedule:

| EVENT | PROPOSED DEADLINE |
|---|---|
| CAFA Notice Pursuant to 28 U.S.C. § 1715(b) | Within 10 days of filing Motion for Preliminary Approval |
| Establishment of Settlement Website | Within 10 days from entry of Preliminary Approval Order |
| Notice Date | Within 60 days from entry of Preliminary |

[1] This Settlement does not include coupons or similar instruments, so the coupon settlement provisions of 28 U.S.C. § 1712 are inapplicable. This Settlement complies with the substantive requirements of CAFA.

20

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

|  | Approval Order |
|---|---|
| Motion for Attorneys' Fees, Costs, Expenses, and Service Awards | Before Notice Date |
| Objection and Opt-Out Deadline | Within 45 days of Notice Date |
| Claims Deadline | 90 days after Notice Date |
| Final Approval Motion and Response to Any Objections | 18 days before Final Approval Hearing |
| Deadline to Submit Notices of Appearance at the Final Approval Hearing | 18 days before Final Approval Hearing |
| Supplement declaration regarding number of claims, exclusions, and objections | 10 days before Final Approval Hearing |
| Final Approval Hearing | [To be set by Court] |
| Award Issuance Date | Begins 14 days after Effective Date |

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs and Proposed Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the Settlement Class for settlement purposes only, appoint Plaintiffs as the Class Representatives and Susman Godfrey L.L.P. and Don Bivens PLLC as Class Counsel, approve the proposed Notice plan, and enter the Proposed Preliminary Approval Order in the requested form.

Dated: April 30, 2026

Respectfully submitted,

**SUSMAN GODFREY L.L.P.**

By:  */s/ Krysta Kauble Pachman*

Krysta Kauble Pachman (280951)
Eliza Finley (301318)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
kpachman@susmangodfrey.com
efinley@susmangodfrey.com

Shawn Rabin (*pro hac vice* forthcoming)
**SUSMAN GODFREY L.L.P.**

21

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
srabin@susmangodfrey.com

*Attorneys for Plaintiffs*
*Domenica Berman and Abygael Piehl*

22
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT