Krysta Kauble Pachman (SBN 280951)
Eliza Finley (SBN 301318)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: kpachman@susmangodfrey.com
Email: efinley@susmangodfrey.com

*Attorneys for Plaintiffs*
*Domenica Berman and Abygael Piehl*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

DOMENICA BERMAN and ABYGAEL PIEHL, individually and on behalf of all others similarly situated,

*Plaintiffs,*

vs.

FORBES MEDIA LLC,

*Defendant.*

Case No. 24-cv-09287-WHO

**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

Date: December 2, 2026
Time: 2:00 pm
Ctrm: Courtroom 2 – 17th Floor
Judge: Hon. William H. Orrick

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on December 2, 2026 at 2:00 p.m., or as soon as this matter may be heard, in Courtroom 2 – 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Domenica Berman and Abygael Piehl ("Plaintiffs") will and hereby do move for an award of attorneys' fees, expenses, and service awards. This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations in support of the motion, argument by counsel at the hearing before this Court, any papers filed in reply, such oral and documentary evidence as may be presented at the hearing of this motion, and all papers and records on file in this matter.

**STATEMENT OF ISSUES**

Whether this Court should approve (1) an award of attorneys' fees incurred by counsel on behalf of the Class in the amount of $2,500,000 to Plaintiffs' counsel, which equals 25 percent of the $10,000,000 in total gross monetary benefits to the Settlement Class; (2) reimbursement of $118,148.40 in case expenses, including expert fees, incurred by counsel on behalf of the Class; (3) reimbursement of notice and claims administration fees incurred by Kroll Settlement Administration LLC ("Kroll"); and (4) service awards of $2,500 for each of the two named Plaintiffs, Domenica Berman and Abygael Piehl.

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. ARGUMENT ..... 2

A. Class Counsel's Fee Request is Reasonable. ..... 2

1. Class Counsel is entitled to fees as a percentage of the common fund, and their requested fee is consistent with the Ninth Circuit's benchmark. ..... 2

2. The requested fee is reasonable, considering the results achieved, the significant risks successfully navigated by counsel, and similar awards. ..... 3

i. The results achieved are exceptional. ..... 3

ii. Class Counsel successfully navigated a high degree of risk on a fully contingent basis. ..... 4

iii. The quality of the representation also supports the fee award. ..... 6

iv. Courts have approved similar awards in other pen register cases. ..... 6

v. The requested fee is reasonable under the lodestar crosscheck. ..... 7

B. Class Counsel's expenses are reasonable, were necessarily incurred to achieve the Settlement, and should be reimbursed. ..... 10

C. Reimbursement of settlement notice and administration fees is appropriate. ..... 11

D. Service awards for each Plaintiff are appropriate. ..... 11

IV. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Animation Workers Antitrust Litig.*,
2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ........ 2

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........ 1, 3, 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........ 2

*De Leon v. Ricoh USA, Inc.*,
2020 WL 1531331 (N.D. Cal. Mar. 31, 2020) ........ 7

*Ebarle v. Lifelock, Inc.*,
2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) ........ 7

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........ 10

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
2017 WL 4685536 (C.D. Cal. May 8, 2017) ........ 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020) ........ 6

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 4

*Glass v. UBS Fin. Servs., Inc.*,
2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........ 7

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) ........ 5

*Gutierrez v. Wells Fargo Bank N.A.*,
2015 WL 2438274 (N.D. Cal. May 21, 2015) ........ 8

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ........ 10

*Hernandez v. Dutton Ranch Corp.*,
2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ........ 3

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 4

*McLeod v. Bank of Am., N.A.*,
2019 WL 1170487 (N.D. Cal. Mar. 13, 2019) .......... 3, 6, 8

*Meta Platforms, Inc. v. Soc. Data Trading Ltd.*,
2022 WL 18806267 (N.D. Cal. Nov. 11, 2022) .......... 10

*Mirmalek v. Los Angeles Times*,
3:24-cv-01797-CRB (N.D. Cal.) .......... 6

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .......... 7

*O'Connor v. Uber Techs., Inc.*,
2019 WL 4394401 (N.D. Cal. Sept. 13, 2019), *aff'd*, 2019 WL 7602362 (9th Cir. Dec. 20, 2019) .......... 5

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......... 3

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .......... 5

*Reyes v. Experian Info. Sols., Inc.*,
856 F. App'x 108 (9th Cir. 2021) .......... 3

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......... 11

*Shah v. Fandom, Inc.*,
3:24-cv-01062-RFL (N.D. Cal.) .......... 6

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .......... 3

*Steiner v. Am. Broad. Co.*,
248 F. App'x 780 (9th Cir. 2007) .......... 8

*Stetson v. Grissom*,
821 F.3d 1157 (9th Cir. 2016) .......... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .......... 8

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 4

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) .......... 7, 12

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ........................................................................ 8, 11

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)........................................................................................ 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
746 F. App'x 655 (9th Cir. 2018) ................................................................................ 10

**Statutes**

California Invasion of Privacy Act, Cal. Pen. Code § 638.51 ........................................... 1, 3, 4, 5

**Other Authorities**

California Senate Bill No. 690, California 2025-2026 Regular Session (May 23, 2026 Version ................................................................................................................ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Extensive efforts by Plaintiffs' counsel—Susman Godfrey L.L.P. and Don Bivens PLLC ("Class Counsel")—resulted in an excellent settlement for the Class. The Settlement[1] provides cash relief of $10,000,000 that will not revert back to defendant Forbes Media LLC ("Forbes") and non-monetary benefits in the form of changes to Forbes's website to provide California visitors with enhanced notice of the presence of third-party Trackers and increased control over how their data is collected and shared with third parties, with the costs of implementing such changes borne entirely by Forbes separate and apart from the Settlement Fund. The substantial recovery supports Class Counsel's request for an award of $2.5 million in attorneys' fees, which equals 25 percent of the Settlement's total cash value.

This result was due to Class Counsel's extensive efforts in this case undertaken with full contingency risk. This was not a case where a prior governmental investigation, criminal conviction, whistleblower, or a news exposé paved the way. Class Counsel also took on great risk by litigating this case when, to their knowledge, no other pen register case under section 638.51 of the California Invasion of Privacy Act ("CIPA") based on internet tracking technologies had progressed to the class certification or summary judgment stage. Class Counsel expended over 900 hours litigating this case and spent $118,148.40 in expert fees and other expenses. *See* Declaration of Krysta Pachman ("Pachman Decl.") ¶¶ 23, 27–28, 33; Declaration of Don Bivens ("Bivens Decl.") at ¶ 5. All told, Class Counsel's investment totaled about $1,000,130.90 all of which could have been wiped out with a loss in the litigation. Pachman Decl. ¶ 23.

Plaintiffs therefore move for an award of attorneys' fees of $2,500,000.00 to Plaintiffs' counsel, which equals 25 percent of the $10,000,000 in total gross monetary benefits to the Settlement Class. That request is consistent with the 25 percent "benchmark" award approved by Courts in this Circuit. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Applying [the percentage-of-recovery] method, courts typically calculate 25% of the

---

[1] All capitalized terms not otherwise defined in this motion have the meanings set forth in the Settlement Agreement. ECF No. 43-3.

fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." (citation omitted)). This motion also seeks reimbursement of $118,148.40 in case expenses, including expert fees. This motion also seeks reimbursement of Kroll's notice and administration fees and $2,500 service awards for each of the two named Plaintiffs.

Forbes does not oppose this Motion. Pachman Decl. ¶ 34.

## II. BACKGROUND

Pursuant to the local rules, Plaintiffs refer to the factual background set out in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 43, and in Plaintiffs' forthcoming motion for final approval of the Settlement, to be filed on November 13, 2026. *See* Northern District of California's Procedural Guidance for Class Action Settlements (requests for attorneys' fees "should not repeat the case history and background facts"; rather, the "motion for attorneys' fees should refer to the history and facts set out in the motion for final approval").

## III. ARGUMENT

### A. Class Counsel's Fee Request is Reasonable.

#### 1. Class Counsel is entitled to fees as a percentage of the common fund, and their requested fee is consistent with the Ninth Circuit's benchmark.

The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In the class action context, the Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[A]wards of attorneys' fees serve the dual purpose of encouraging persons to seek redress for damages caused to an entire class of persons and discouraging future misconduct." *In re Animation Workers Antitrust Litig.*, 2016 WL 6663005, at *3 (N.D. Cal. Nov. 11, 2016). The Court has discretion to use either a percentage-of-recovery method or a lodestar method to award fees, but the "use of the percentage method in common fund

cases appears to be dominant" in the Ninth Circuit. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (collecting authorities).

For the percentage-of-recovery method, 25 percent of the recovery is the benchmark that is considered presumptively reasonable in the Ninth Circuit. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." (citation omitted)); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("[W]e established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases."); *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 111 (9th Cir. 2021) (holding that the court abused its discretion when awarding a 16.67 percent fee award); *Hernandez v. Dutton Ranch Corp.*, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) (recognizing that "the Ninth Circuit uses 25 percent of the fund as the presumptively reasonable 'benchmark' for awarding fees" and granting upward departure to 33 percent).

Here, Class Counsel is requesting a fee that is consistent with the 25 percent benchmark.

**2. The requested fee is reasonable, considering the results achieved, the significant risks successfully navigated by counsel, and similar awards.**

Class Counsel's requested fee is also reasonable under the factors courts consider when awarding an upward departure from the 25 percent benchmark, which Class Counsel does not even seek here. Courts in this district consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *McLeod v. Bank of Am., N.A.*, 2019 WL 1170487, at *5 (N.D. Cal. Mar. 13, 2019) (quoting *Viceral v. Mistras Grp., Inc.*, 2017 WL 661352, at *3 (N.D. Cal. Feb. 17, 2017)). "Of these factors, the first—the results obtained for the class—is the most critical." *Id.* at *6 (internal quotation marks and citation omitted).

i. <u>The results achieved are exceptional.</u>

First, the results obtained are excellent. The $10 million cash recovery compares favorably to prior CIPA pen register settlements, even when considering that the class is estimated to include 3.9 million members. *See* Plaintiffs' Mot. for Prelim. Approval (ECF No. 43) at 4, 6. The Settlement

is also outstanding when accounting for litigation risks, such as the distinct possibility that rapidly evolving privacy laws and related caselaw would develop unfavorably for Plaintiffs' claims. *See* Part ii., below.

The Settlement's non-monetary benefits bolster the excellent result for the Class. Improved transparency and control over the use of trackers for California residents will allow Class Members to avoid the invasions of privacy that CIPA was intended to prohibit.

ii. <u>Class Counsel successfully navigated a high degree of risk on a fully contingent basis.</u>

The risks Class Counsel faced here were high in this fully contingent case. Forbes's primary defense was that the transmission of IP addresses and other identifiers by trackers does not give rise to a concrete injury for purposes of Article III standing. This question is largely unsettled in the Ninth Circuit. *Compare Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (finding allegations about being "subject to [] profile-building practices" by pixels was "sufficient to plead an injury conferring Article III standing"), *with Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178–82 (N.D. Cal. 2025) (finding disclosure of IP addresses by trackers did not give rise to a concrete injury and noting "a division among district courts in this Circuit as to whether *Transunion* overruled *Facebook Internet Tracking*'s holding that a violation of CIPA, standing alone, gives rise to a concrete injury"). This unresolved question of standing posed a meaningful risk to Plaintiffs' claims.

Class Counsel also faced other risks. Forbes would have vigorously opposed class certification, which was not a certainty. And even if the class had been certified, there was a real risk that Plaintiffs' claims would have been dismissed at the summary judgment stage. *See Torres v. Prudential Financial, Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) (granting summary judgment on CIPA wiretapping claims after certifying a class).

The rapidly evolving nature of CIPA tracker litigation compounded these risks. For example, during the course of litigation, Senator Caballero introduced a bill that would have retroactively carved out the scope of this action from CIPA's pen register prohibition. *See* 2025 California Senate Bill No. 690, California 2025–2026 Regular Session (May 23, 2026 Version).

Nor did Class Counsel have the benefit of government investigations, let alone indictments, consent decrees, or guilty pleas. This is not an instance where a plaintiff was merely following the lead of the government, "arriving on the scene after some enforcement or administrative agency has made the kill." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992). Rather, Plaintiffs brought this case even though no other CIPA case based on the theory that website trackers qualify as pen registers had reached the class certification or summary judgment stage.

Class Counsel also bore enormous financial risk in taking on this case. Class Counsel used no outside litigation funding. Pachman Decl. ¶ 22. They advanced $118,148.40 in expenses and 902.2 hours in attorney time over the year and a half in which this case has been litigated to date—all of which could have resulted in no compensation had the case been lost. *Id.* ¶ 23.

Courts in this district have found that this type of contingent risk is an important factor in evaluating the reasonableness of a fee, and that successfully navigating such risk supports fee awards higher than the 25 percent recovery sought here. *See O'Connor v. Uber Techs., Inc.*, 2019 WL 4394401, at *7 (N.D. Cal. Sept. 13, 2019), *aff'd*, 2019 WL 7602362 (9th Cir. Dec. 20, 2019) (fee request for 25 percent of award justified because "counsel accepted this case on a fully contingent arrangement, with no payment up front, and have borne the expenses, costs, and risks associated with litigating this case"). Indeed, a 25 percent recovery on a fully contingent basis is less than what Class Counsel could obtain on the open market. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015) (listing "the market rate for the particular field of law" as a relevant factor under the percentage-of-recovery method). Susman Godfrey regularly takes high-stakes non-class commercial cases on a contingent fee basis (*e.g.*, patent, legal malpractice, antitrust, etc.), and it typically negotiates contingent fee arrangements in such cases, where the firm advances expenses, starting at 40% of the gross sum recovered, with further increases based on the time of settlement and trial. Pachman Decl. ¶ 24.

Here, the risk presented by the case, the contingent nature of the fee, and the financial burden carried by Class Counsel all support the requested 25 percent fee award.

iii. <u>The quality of the representation also supports the fee award.</u>

The Court may also consider the skill required and quality of work performed by plaintiffs' counsel. *McLeod*, 2019 WL 1170487, at *5. Class Counsel has significant experience with class actions, including data privacy class actions and settlements thereof. Pachman Decl. ¶¶ 2–7; Bivens Decl. ¶ 3. Susman Godfrey, specifically, has represented numerous classes of individuals seeking redress for violations of privacy laws and the lawyers working for the Class have substantial experience prosecuting large-scale class actions. Pachman Decl. ¶¶ 2–7.

The reputation, experience, and skill of Class Counsel were essential to the success in this litigation. From the outset, they used their expertise and skill to obtain maximum recovery for the Class, given the particular factual and legal complexities of this litigation. Had the parties not reached a settlement, they would have continued to litigate complex legal issues before this Court. At no time has Forbes conceded liability, the appropriateness of certification other than for settlement purposes, or the existence of Article III standing. In pressing its arguments, Forbes was vigorously represented by highly regarded litigation counsel from Holland & Knight. *Cf. In re Gen. Motors LLC Ignition Switch Litig.*, 2020 WL 7481292, at *3 (S.D.N.Y. Dec. 18, 2020) ("Class Counsel faced worthy adversaries of high caliber, which is relevant to evaluating the quality of Class Counsel's work."). Given the significant risks and uncertainty associated with this complex class action, it is a testament to Class Counsel's skill, creativity, and determination that they were able to negotiate an excellent settlement on behalf of the Settlement Class.

iv. <u>Courts have approved similar awards in other pen register cases.</u>

Courts have approved similar awards in two other pen register cases that have recently settled. In *Shah v. Fandom, Inc.*, the court awarded Class Counsel attorneys' fees, costs, and expenses in the amount of $399,962.96, approximately 33% of the $1.2 million settlement fund. Case No. 3:24-cv-01062-RFL (N.D. Cal.), ECF Nos. 73-1 (Settlement Agreement), 90 (Order Granting Final Approval). And in *Mirmalek v. Los Angeles Times*, the court awarded Class Counsel attorneys' fees, costs, and expenses in the amount of $982,700.40, approximately 25.6% of the $3.85 million settlement fund. Case No. 3:24-cv-01797-CRB (N.D. Cal.), ECF Nos. 45-2 (Settlement Agreement), 71 (Order Granting Final Approval).

v. The requested fee is reasonable under the lodestar crosscheck.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. "[C]ourts have discretion to apply a positive multiplier after considering factors such as: the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1010 (N.D. Cal. 2015).

Courts have declined to conduct a lodestar cross-check when the requested fee is at or below the 25 percent benchmark. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15–16 (N.D. Cal. Jan. 26, 2007) (declining to perform a cross-check in approving an $11.25 million fee where the fee was 25% of the recovery); *Ebarle v. Lifelock, Inc.*, 2016 WL 5076203, at *11 (N.D. Cal. Sept. 20, 2016) (declining to perform a cross-check when "the fee request was significantly below the 25% benchmark"). Moreover, "[w]hen the lodestar is used as a cross-check, however, courts 'have generally not been required to closely scrutinize each claimed attorney-hour, but have instead used information on attorney time spent to focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.'" *De Leon v. Ricoh USA, Inc.*, 2020 WL 1531331, at *15 (N.D. Cal. Mar. 31, 2020) (quoting *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 505 (2016)).

Here, Class Counsel's request of 25 percent is consistent with the benchmark and is presumptively reasonable, making a lodestar cross-check unnecessary. Nonetheless, the requested fee award is equal to a lodestar multiplier of 2.8 (*i.e.*, $2,500,000.00 divided by a lodestar of $881,982.50), *see* Pachman Decl. ¶ 26,[2] which confirms the reasonableness of the requested award.

[2] The lodestar is calculated here at current hourly rates for 2026. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989) (endorsing "an appropriate adjustment for delay in payment" by applying "current rate"); *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement.").

The 2.8 lodestar multiplier is well below the range of multipliers that courts in this Circuit have approved, where multipliers under four are "frequently awarded." *E.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (surveying class action settlements nationwide and noting 54 percent of lodestar multipliers fell within the 1.5 to 3.0 range, and that 83 percent of multipliers fell within the 1.0 to 4.0 range; affirming fee award equal to 3.65 multiplier); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *13 (N.D. Cal. Apr. 3, 2013) (approving multiplier of 5.22); *Gutierrez v. Wells Fargo Bank N.A.*, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (noting that "this order allows a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment"); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming fee award equal to 6.85 multiplier because it fell "well within the range of multipliers that courts have allowed"); *McLeod*, 2019 WL 1170487, at *7 (awarding attorneys' fees of $3 million, for a lodestar multiplier of 3.5); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier "is well within the acceptable range for fee awards in complicated class action litigation such as this").

As set forth in the accompanying Declaration of Krysta Pachman, the 902.2 hours Class Counsel has spent litigating over almost a year and a half are reasonable, given the work performed which included:

- Drafting the initial complaint after investigating the technology at issue and confirming that the Trackers at issue were present on Plaintiffs' browsers;
- Serving 32 document requests and 11 interrogatories on Forbes, leading to the collection and analysis of 3,812 pages of documents, while repeatedly pressing Forbes to remedy deficiencies in its production and interrogatory responses;
- Serving third-party subpoenas on the developers of the trackers at issue—Microsoft and LinkedIn—who were largely uncooperative and dilatory and only produced helpful documents after extensive efforts to meet and confer and follow up on their deficient productions;

- Responding to 42 document requests, 48 interrogatories, and 98 requests for admissions propounded by Forbes, assisting Plaintiffs in collecting the extensive amounts of information requested by Forbes, and conducting extensive research to push back against Forbes's requests for Plaintiffs' highly personal information such as multiple years of their Internet browsing history;
- Preparing mediation briefing, attending a full-day mediation conducted under the supervision of Judge Segal, and continuing to negotiate the term sheet and long form agreement with counsel for Forbes;
- Beginning to draft Plaintiffs' motion for class certification and incurring the expense of Plaintiffs' expert's preliminary draft report in support of that motion;
- Preparing the motion for preliminary approval of the settlement.

*See* Pachman Decl. at ¶ 15.

All told, Class Counsel and their staff spent approximately 902.2 hours of work at hourly rates ranging from $150 to $2,500. Of that amount, approximately 149.9 hours ($153,862.50) were spent on work related to investigating Plaintiffs' claims and preparing the complaint, 391 hours ($356,805.00) were spent on discovery-related work; 82 hours ($100,885.00) were spent performing work related to the mediation; 91 hours ($102,470.00) were spent working on the proposed settlement and the motion for preliminary approval; 96.9 hours ($73,455.00) were spent on general case management work; and 91.4 hours ($94,505.00) were spent performing legal research. *See* Pachman Decl. ¶ 27.

Class Counsel's hourly rates are also reasonable. The rates for Class Counsel and their staff who billed significant amounts of time to this case are lower than peer law firms litigating matters of similar magnitude. In a survey of AmLaw 50 law firms performed by PwC Product Sales, LLC in 2025, the median standard billing rate for equity partners was $1,770 and the median standard billing rate for associates was $1,088. *See* Pachman Decl. ¶ 31. Here, the Susman Godfrey attorney who worked this case day-to-day was an associate until she became an equity partner in January 2026. *Id.* ¶ 28. Her current billing rate of $1,100.00 is significantly less than the median standard billing rate for equity partners and is commensurate with the median standard billing rate for

associates. All but one of the equity partners working on this case bill at rates below the $1,770 median rate for equity partners. *See id.* ¶¶ 28, 31. Given those comparisons, courts routinely find Susman Godfrey's rates reasonable. *See, e.g.*, *Meta Platforms, Inc. v. Soc. Data Trading Ltd.*, 2022 WL 18806267, at *5 (N.D. Cal. Nov. 11, 2022) (Susman Godfrey's rates "were reasonable" and "consistent with the prevailing market rates for attorneys of similar skill, experience, and reputation in the San Francisco Bay Area"); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (finding SG's rates "reasonable" and "comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude"); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *8 (C.D. Cal. May 8, 2017) (finding Susman Godfrey's rates reasonable).

Finally, the current 2.8 multiplier does not account for the *future* hours that Class Counsel will need to work to ensure that all Class Members receive the Settlement relief, including time that will be spent preparing papers in support of final approval, shepherding the notice and disbursement process, and administering the Settlement until all funds are distributed. Courts consider these expected future hours worked when assessing the reasonableness of a lodestar cross-check. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check[.]"). Given that the Class size is estimated to include 3.9 million individuals, Class Counsel anticipates being required to respond to multiple inquiries from Class Members during administration. That additional work would bring the effective lodestar multiplier in this matter even lower than the current 2.8 multiplier. Pachman Decl. ¶ 26.

**B. Class Counsel's expenses are reasonable, were necessarily incurred to achieve the Settlement, and should be reimbursed.**

Class Counsel requests reimbursement of $118,148.40 for expenses incurred in connection with this action. Pachman Decl. ¶ 32. These out-of-pocket expenses, including filing fees, legal research charges, and expert fees, are all of the sort that would "normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). The vast majority of these expenses were due to expert work performed by Plaintiffs' retained technical expert. The expert was closely

involved in helping Plaintiffs navigate discovery of technical information from Forbes, Microsoft, and LinkedIn. He also prepared a preliminary draft of the expert report in support of class certification. Pachman Decl. ¶ 33. As set forth in the accompanying Declaration of Krysta Pachman, expert work accounted for $75,520.00 in expenses. Pachman Decl. ¶ 32.

Class Counsel advanced these expenses without any assurance they would ever be reimbursed given the contingent nature of the case. That they were willing to spend their own money (where reimbursement depended entirely on this litigation's success) is perhaps the best indicator that expenditures were reasonable, necessary, and economical.

**C. Reimbursement of settlement notice and administration fees is appropriate.**

Plaintiffs also request that the Court approve payment of Notice and Administration Costs incurred by Kroll under paragraphs 5, 15, and 31 of the Settlement Agreement. Total Notice and Administration Costs are estimated at $133,653 for a 1% claims rate and $188,609 for a 3% claims rate. Pachman Decl. ¶ 35.

**D. Service awards for each Plaintiff are appropriate.**

Plaintiffs each request a service award of $2,500 for being a class representative. A service award is meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Factors the court may consider include: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Many of these factors support Plaintiffs' requests for incentive awards. Berman and Piehl participated in over a year of litigation. They both spent time reviewing the complaint, taking screenshots of various settings and other information requested by Forbes, discussing discovery responses with Counsel, and staying in the loop on the progress of the litigation. Neither will receive

a great personal benefit given that their claims make up only a tiny fraction of the common fund. *See* Declaration of Domenica Berman at ¶¶ 5–8; Declaration of Abygael Piehl at ¶¶ 5–8.

An incentive award of $2,500 per Plaintiff is also well within the range of a presumptively reasonable service award. *See, e.g.*, *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1010 (N.D. Cal. 2015) ("The $2,500 awards requested are reasonable, especially in light of other cases where similar or larger incentive awards have been awarded to named class plaintiffs.").

## IV. CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that this Court award (1) their requested attorneys' fees in the amount of $2,500,000.00, plus a *pro rata* share of the interest earned on the Settlement Fund; (2) reimbursement of $118,148.40 in litigation expenses; (3) reimbursement of notice and administration expenses incurred by Kroll; and (4) $2,500 service awards to Plaintiffs Domenica Berman and Abygael Piehl.

Dated: August 7, 2026

Respectfully submitted,

**SUSMAN GODFREY L.L.P.**

By: */s/ Krysta Kauble Pachman*

Krysta Kauble Pachman (280951)
Eliza Finley (301318)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
kpachman@susmangodfrey.com
efinley@susmangodfrey.com

Shawn Rabin (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
srabin@susmangodfrey.com

Don Bivens (*pro hac vice*)
**DON BIVENS PLLC**
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 708-1450
don@donbivens.com

*Attorneys for Plaintiffs*
*Domenica Berman and Abygael Piehl*