Krysta Kauble Pachman (SBN 280951)
Eliza Finley (SBN 301318)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: kpachman@susmangodfrey.com
Email: efinley@susmangodfrey.com

*Attorneys for Plaintiffs*
*Domenica Berman and Abygael Piehl*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

DOMENICA BERMAN and ABYGAEL PIEHL, individually and on behalf of all others similarly situated,

*Plaintiffs,*

vs.

FORBES MEDIA LLC,

*Defendant.*

Case No. 24-cv-09287-WHO

**DECLARATION OF KRYSTA K. PACHMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

Date: December 2, 2026
Time: 2:00 pm
Ctrm: Courtroom 2 – 17th Floor
Judge: Hon. William H. Orrick

# DECLARATION OF KRYSTA K. PACHMAN

I, Krysta K. Pachman, declare as follows:

1. I am an attorney admitted to the bar of California. I am over eighteen years of age and have personal knowledge of the facts set forth in this declaration and could and would testify competently to them. I submit this declaration in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

2. I am a partner in the law firm of Susman Godfrey L.L.P. ("SG"), attorneys of record, along with the law firm of Don Bivens, PLLC, for Plaintiffs Domenica Berman and Abygael Piehl ("Plaintiffs") and the proposed Settlement Class, as defined in the settlement agreement (the "Settlement").[1]

3. My firm and I have extensive experience litigating class action lawsuits of similar size, scope, and complexity to this one. I have spent my career successfully representing classes in complex cases, securing a $100 million settlement in *In re Pattern Energy Group Sec. Litig.*, Case No. 20-cv-275 (D. Del.); a settlement valued at over $100 million in *Ferrick, et al. v. Spotify USA*, No. 1:16-cv-08412 (S.D.N.Y.); a $40 million settlement in *Timber Hill v. Pershing Square Capital Management L.P.*, et al., No. 2:17-cv-04776 (C.D. Cal.); and a $37.5 million settlement in *Schulein, et al. v. Petroleum Development Corp.*, et al., No. 8:11-cv-01891 (C.D. Cal.), among others.

4. My work earned me recognition by National Law Journal as an Elite Woman of the Plaintiff's Bar in 2025, Law360 as a Class Action Litigation Rising Star in 2023, the Daily Journal as a Top Woman Lawyer in 2022, National Law Journal's Elite Trial Lawyers as a Rising Star of the Plaintiffs Bar in 2021 and 2023, Best Lawyers in America as "One to Watch" in 2021, The Recorder as a California Trailblazer in 2020, and as one of Benchmark Litigation's "40 and Under Hot List" in 2020 through 2024. I have also been recognized among the nation's top young lawyers on Lawdragon's Inaugural 500 X – The Next Generation list published in 2023. In 2018, I was

[1] Unless otherwise noted, all capitalized terms mean the same as in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Krysta Pachman in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF No. 43-3.

named as a Next Generation Woman Leader in Tech Law by The Recorder. I have been named as a Southern California Rising Star by the Super Lawyers® every year since 2017.

5. My law partner Shawn Rabin, who is also serving as counsel in this case, has extensive experience litigating class actions, including in high-profile privacy cases like *Brown v. Google LLC*, 4:20-cv-03664-YGR (N.D. Cal.), and *Rodriguez v. Google*, 3:20-cv-04688-RS (N.D. Cal.), the latter of which recently resulted in a $425 million verdict for the class. Mr. Rabin was recently appointed Co-Chair of the Direct Purchaser Class in *In re Apple Inc. Smartphone Antitrust Litigation*, 2:24-md-03113 (D.N.J.), and was appointed Liaison Counsel for the Direct Purchaser Class in *In re Multiplan Antitrust Litigation*, 1:24-cv-06795 (MDL No. 3121) (N.D. Ill.).

6. Mr. Rabin has been recognized by several publications as a top commercial litigator and plaintiffs' lawyer. Lawdragon named him as a Legal Legend in 2025 and as one of the Nation's Leading Lawyers every year since 2019; Chambers USA named him as a Leading Commercial Litigator in New York every year since 2020; and National Law Journal named him a Trailblazer for Plaintiff-side Litigation in 2022 and 2018. Mr. Rabin has also been recognized by Best Lawyers and Super Lawyers as a Top Lawyer for Commercial Litigation in New York. Mr. Rabin has had success not only litigating but also defending against class actions.

7. My law partner Eliza Finley, who is also serving as class counsel in this case, has extensive experience litigating class actions, including *Liu v. Dignity Health, et al.*, Case No. 19STCV21296 (Los Angeles Superior Court), *In re: National Football League's "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668 (C.D. Cal.), *Hendrix v. Apple Inc.*, Case No. 3:25-cv-07558, and *Nazemian v. Nvidia Corp.*, Case No. 4:24-cv-01454 (N.D. Cal.). Her work has earned her recognition by the Daily Journal as a Top Woman Lawyer in 2026 and by the National Law Journal as a Rising Star of the Plaintiffs' Bar in 2026.

8. A resume for Susman Godfrey and the professional biographies of each of the Susman Godfrey partners involved in this litigation were attached as Exhibit 2-A to the Declaration of Krysta Pachman in Support of Plaintiffs' Motion for Preliminary Approval of Class Action

Settlement. ECF No. 43-4.

9. The Settlement is the result of extensive, arm's-length negotiations between the parties with the assistance of an experienced mediator, the Honorable Suzanne H. Segal, a retired United States District Judge.

10. I was among the principal negotiators of the proposed class action settlement. Following extensive negotiations, the parties executed a long-form Settlement Agreement on April 21, 2026.

11. Per the Settlement Agreement, any incentive awards, attorneys' fees, litigation expenses, and notice and administration fees as approved by the Court will be paid out of the Final Settlement Fund. *See* Settlement Agreement § 58.

12. On June 11, 2026, the Court granted the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, certifying the Settlement Class for purposes of preliminarily approving the Settlement, appointing Plaintiffs Domenica Berman and Abygael Piehl to serve as Class Representatives and SG and Don Bivens PLLC as Class Counsel pursuant to Rule 23(g), appointing Kroll Settlement Administration LLC as the Settlement Administrator, directing class notice, and setting a final approval hearing for December 2, 2026. ECF No. 48.

13. The case was originally filed on December 20, 2024, alleging that Forbes Media LLC ("Forbes") violated the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 638.51(a), and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, by installing and using third-party trackers (the "Trackers") on Forbes.com that collected IP addresses and other unique identifiers from website visitors and transmitted that information to third parties.

14. Forbes did not move to dismiss the Complaint, and the Plaintiffs and Forbes (the "Parties") proceeded to engage in extensive written discovery. The Parties exchanged over 2,500 documents and also served and responded to numerous requests for admission and interrogatories.

15. SG's efforts in litigating this case include, but are not limited to:

a. Drafting the initial complaint after investigating the technology at issue and confirming that the Trackers at issue were present on Plaintiffs' browsers;

b. Serving 32 document requests and 11 interrogatories on Forbes, leading to the collection and analysis of 3,812 pages of documents, while repeatedly pressing Forbes to remedy deficiencies in its production and interrogatory responses;

c. Serving third-party subpoenas on the developers of the trackers at issue—Microsoft and LinkedIn—who were largely uncooperative and dilatory and only produced helpful documents after extensive efforts to meet and confer and follow up on their deficient productions;

d. Responding to 42 document requests, 48 interrogatories, and 98 requests for admissions propounded by Forbes, assisting Plaintiffs in collecting the extensive amounts of information requested by Forbes, and conducting extensive research to push back against Forbes's requests for Plaintiffs' highly personal information such as multiple years of their Internet browsing history;

e. Preparing mediation briefing, attending a full-day mediation conducted under the supervision of Judge Segal, and continuing to negotiate the term sheet and long form agreement with counsel for Forbes;

f. Beginning to draft Plaintiffs' motion for class certification and incurring the expense of Plaintiffs' expert's preliminary draft report in support of that motion;

g. Preparing the motion for preliminary approval of the settlement.

16. Plaintiffs also engaged and worked extensively with a software expert, Chris Thompson, who had the expertise necessary to understand how the Trackers collect and transmit user data.

17. The Parties were conducting discovery and briefing class certification when the Court asked the Parties to explore mediation. Counsel for the Parties then decided to ask the Court to modify the pretrial schedule to allow the Parties to prepare for the mediation and begin depositions shortly thereafter if negotiations were unsuccessful.

18. In my view and in the view of all counsel for Plaintiffs, the Settlement Agreement is fair, reasonable, and adequate. Despite our confidence in the strength of the Plaintiffs' claims, we recognize that the expense, duration, and complexity of protracted litigation would be substantial and the outcome of future motion practice and any trial on the merits would be uncertain.

19. Whereas proceeding with litigation would pose a significant risk of no recovery as well as ongoing, substantial additional expenditures of time and resources, the Settlement Agreement will confer an immediate benefit on Plaintiffs and the Settlement Class Members. The Settlement Agreement is fair and reasonable in light of the complexities of the case, the state of the law, and the uncertainties of class certification and litigation.

20. Plaintiffs and their counsel have vigorously prosecuted this action and will continue to do so through final approval. Plaintiffs and counsel brought their claims, investigated the technology at issue, engaged in extensive discovery, and attended mediation with a neutral mediator.

21. Class Counsel did not have the benefit of government investigations, indictments, consent decrees, or guilty pleas. This is not an instance where a plaintiff was merely following the lead of the government.

22. Class Counsel also used no outside litigation funding.

23. Class Counsel also bore financial risk in taking on this case— $118,148.40 in advanced expenses and 902.2 hours in attorney time (860.1 of which was borne by SG) over the almost year and a half in which this case has been litigated to date—all of which could have resulted in no compensation had the case been lost. In all, Class Counsel invested about $1,000,130.90, with no guarantee that the firm would receive any compensation.

24. Susman Godfrey frequently takes high-stakes non-class commercial cases on a contingent fee basis. In cases like this one where the firm is advancing expenses, the firm has a standard contingency agreement, under which it receives 40% of the gross sum recovered by a settlement that is agreed upon, or other resolution that occurs, on or before the 60th day preceding any trial, plus reimbursement of expenses. Sophisticated parties and institutions have agreed to

these standard market terms. The firm receives 45% of gross recoveries received after that time. The requested fee here of 25% of the gross recovery is less than what Susman Godfrey would receive under its standard contingency agreement entered into in a competitive market.

25. Unlike many firms on the class action side, Susman Godfrey represents plaintiffs and defendants. When entering into result-based fee deals, Susman Godfrey strives for a substantial return on its investment in time and expenses to compensate for risks and opportunity costs, including the risk of no recovery and the opportunity cost of foregoing work on hourly billing work that provides a steady income stream. As is common in the industry, Susman Godfrey's standard contingency percentages are based upon the gross amount recovered and provide for the recoupment of any advanced expenses.

26. The total lodestar value of SG's professional services is $858,847.50 and the total lodestar of Don Bivens PLLC's time is $23,135. The requested attorneys' fee represents a lodestar multiplier of 2.8 for the time worked through June 11, 2026. This lodestar multiplier is likely to decrease given that Class Counsel will need to expend additional time and effort to fully resolve this case, including the time to prepare papers in support of final approval, and shepherding the notice and disbursement process once the Settlement has final approval. Based upon its experience in other class action cases, SG estimates that the multiplier will only decrease as Class Counsel invests additional attorney time into preparing to move for final approval, managing Class Member inquiries about the Settlement, and administering the Settlement if it obtains final approval from the Court.

27. Class Counsel and their staff spent approximately 902.2 hours of work at hourly rates ranging from to $150 to $2,500. Of that amount, approximately 149.9 hours ($153,862.50) were spent on work related to investigating Plaintiffs' claims and preparing the complaint, 391 hours ($356,805.00) were spent on discovery-related work; 82 hours ($100,885.00) were spent performing work related to the mediation; 91 hours ($102,470.00) were spent working on the proposed settlement and the motion for preliminary approval; 96.9 hours ($73,455.00) were spent on general case management work; and 91.4 hours ($94,505.00) were spent performing legal

research.

28. The schedule below is a summary reflecting the amount of time spent, through June 11, 2026, by the attorneys and professional support staff of Susman Godfrey who were involved in this litigation. The following schedule was prepared from daily time records regularly prepared and maintained by Susman Godfrey, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses are excluded and not reflected below.

| **Attorneys** | **Current Rate** | **Hours** | **Value** |
|---|---|---|---|
| Eliza Finley | $1,100.00 | 659.1 | $725,010.00 |
| Krysta Pachman | $1,300.00 | 59.2 | $76,960.00 |
| Shawn Rabin | $2,500.00 | 7 | $17,500.00 |
| Michael Adamson | $1,300.00 | 0.3 | $390.00 |
| **Paralegals** | **Current Rate** | **Hours** | **Value** |
| Martha Izquierdo | $350.00 | 92.3 | $32,305.00 |
| Simon DeGeorges | $475.00 | 0.9 | $427.50 |
| Nicholas Loaiza | $350.00 | 0.3 | $105.00 |
| **Summer Intern** | **Current Rate** | **Hours** | **Value** |
| Gabriella Smith | $150.00 | 41 | $6,150.00 |
| Totals | | 860.1 | $858,847.50 |

Eliza Finley was an associate up until she became an equity partner in January 2026.

29. All the time spent litigating this matter was reasonably necessary and appropriate to prosecute the action, and the results achieved further confirm that the time spent on the case was proportionate to the amounts at stake.

30. The hourly rates for SG's attorneys and professional staff are the firm's standard hourly rates. The hourly rates of SG's attorneys who worked on this case range from $1,100 to $2,500 for partners. Susman Godfrey only has equity partners. All partners who worked on this case are based either in New York or Los Angeles. The hourly rates of paralegals range from $350

to $475.

31. In a nationwide survey of AmLaw 50 law firms performed by PwC Product Sales, LLC and issued in 2025, the median standard billing rate for equity partners was $1,770 and the median standard billing rate for associates was $1,088. Here, all but one of the SG partners (all of whom are based in New York or Los Angeles) working on this matter have billing rates below the 2025 median standard billing rate for equity partners.

32. As detailed and categorized in the below schedule, SG has advanced a total of $118,148.40 in un-reimbursed expenses in connection with the prosecution of this litigation. These expenses were reasonably necessary to the prosecution of this action and directly benefitted the Class, and are of the type that Susman Godfrey normally incurs in litigation.

| **Expense Category** | **Cumulative Expenses** |
|---|---|
| Photocopies/Reproduction/Messenger Services | $281.00 |
| Document Review Hardware/Hosting | $26,302.62 |
| Experts/Consultants | $75,520.00 |
| Filing/Service/Court Reporter Fees/Transcript/Court Fees | $1,578.52 |
| Mediation | $11,750.00 |
| Research/Westlaw | $1,556.03 |
| Travel | $1,160.23 |

33. The vast majority of these expenses were due to expert work performed by Chris Thompson and his company, 233 Analytics, LLC. Mr. Thompson and 233 Analytics were closely involved in the discovery and mediation process to help ensure that Forbes and third parties had provided all the technical information necessary to show how the Trackers functioned and support a motion to certify the class. Mr. Thompson also prepared a preliminary draft of the expert report in support of class certification.

34. On July 27, 2026, I received email confirmation from Forbes's counsel that Forbes does not oppose Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

35. Kroll's estimate for notice and settlement administration fees is $133,653 for a 1% claims rate and $188,609 for a 3% claims rate based on an estimated class size of 3.9 million. Both estimates include the cost of implementing an IP validation portal to prevent fraud.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 7, 2026, in Leawood, Kansas.

Krysta Kauble Pachman

Krysta Kauble Pachman